UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

 KHETAMMOHAMMAD A.,

                              Plaintiff,                                    **DECISION AND ORDER**

                v.                                                          1:20-CV-01347-EAW

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Khetammohammad A. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security benefits ("SSI").  (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 10; Dkt. 11).  For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 11) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on May 2, 2017. (Dkt. 9 at 137-49).[1]  In her application, Plaintiff alleged disability beginning January 1, 2011. (*Id*. at 137). Plaintiff's application was initially denied on July 11, 2017. (*Id*. at 66).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Arthur Patane on March 22, 2019, and continued on July 23, 2019. (*Id*. at 37-51).  On August 22, 2019, the ALJ issued an unfavorable decision. (*Id*. at 13-24).  Plaintiff then requested review by the Appeals Council, which the Council denied on July 22, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id*. at 4-6).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920 and determined at step one of the analysis that Plaintiff had not engaged in substantial gainful work activity since May 2, 2017, the alleged onset date.  (Dkt. 9 at 15).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: lumbar degenerative disc disease, an affective disorder, post-traumatic stress disorder, and

obesity.  (*Id*.).  The ALJ also determined that Plaintiff's asthma was a non-severe impairment.  (*Id*. at 16).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 16-18).  Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could perform simple work with frequent, but not constant, interaction with others.  (Dkt. 9 at 19).

At step four, the ALJ found that Plaintiff did not have any past relevant work and was not able to communicate in English.  (*Id.* at 23).  Relying on Medical-Vocational Rule 202.16, the ALJ determined that Plaintiff's limitation to simple work with frequent interaction with others does not reduce the occupational base at the light exertional level.  (*Id*. at 24).  Accordingly, the ALJ concluded that Plaintiff was not disabled from the date of her application through the date of his decision.  (*Id.*).

## II.     <u>Remand for Further Proceedings is Necessary</u>

Plaintiff argues that the ALJ erred by: (1) failing to develop the record related to her physical limitations, which led to the ALJ's improper RFC determination; and (2) failing to obtain the testimony of a Vocational Expert ("VE") that was particularly necessary in light of Plaintiff's inability to speak English.  (Dkt. 10-1 at 8-18).  Because the Court finds that remand is warranted based on the ALJ's failure to develop the record, it does not address Plaintiff's argument concerning the lack of VE testimony.

Plaintiff immigrated to the United States as a refugee from Syria in June 2016 and sought disability benefits for physical and mental impairments almost a year later in May 2017. (Dkt. 9 at 136-48). She first appeared unrepresented in front of the ALJ on March 22, 2019, and requested, through an interpreter, an adjournment of the hearing to secure legal counsel. (*Id*. at 47-51). Prior to granting Plaintiff's request, the ALJ inquired about Plaintiff's medical treatment so that he could obtain her medical records before the next hearing date. (*Id*. at 49). Plaintiff advised the ALJ that she received mental health services from Dr. Faye at "Best South"[2] and treatment for her asthma from Dr. Chersee at Northwest Community Health Center. (*Id*. at 49-50, 304). On May 13, 2019, in response to the release of medical records signed by Plaintiff at the hearing, the ALJ received the mental health records, but the records from Northwest Community Health Center remained missing. (*Id.* at 303-447).

Plaintiff retained counsel in June 2019. (*Id*. at 120-21). A month later, counsel sent a letter to the ALJ advising him that he had requested Plaintiff's updated medical records from BestSelf and Northwest Community Health Center hoping to receive them before Plaintiff's continued hearing. (*Id*. at 215). The record reveals that counsel received Plaintiff's updated treatment records from BestSelf on July 22, 2022—a day before the hearing. (*Id*. at 448-73). Notably, counsel never received Plaintiff's updated medical file from Northwest Community Health Center.

---

[2]    Plaintiff was referring to BestSelf Behavioral Health ("BestSelf"), which appears to also be known as Lake Shore Behavioral Health, Inc., where she received mental health treatment from November 2016 through July 2019. (*Id.* at 305-473).

On July 23, 2019, Plaintiff appeared with counsel at the continued hearing. (*Id*. at 38-45). She testified through an interpreter that aside from her mental health issues, a "disc problem in [her] back . . . [and a] problem in [her] knees" sustained as a result of an explosion were the reasons why she was unable to work. (*Id*. at 41). Plaintiff further testified that her primary doctor treated her for both conditions. (*Id*. at 42). Notably, during the hearing, the ALJ did not ask Plaintiff to clarify who her physician was or inquire about any other details related to her treatment of these impairments. What is more, the ALJ did not initiate any discussion with either Plaintiff or her counsel about the status of Plaintiff's missing medical records from Northwest Community Health Center and did not keep the record open to allow for their submission following Plaintiff's hearing.

The parties do not dispute that Plaintiff's treatment records from Northwest Community Health Center were never received by either Plaintiff's counsel or the ALJ. Instead, they dispute who was responsible for obtaining these records and whether they were even needed to determine Plaintiff's RFC. (Dkt. 10-1 at 8-14; Dkt. 11 at 11-16). Having considered the circumstances of this case, the Court finds that it was the ALJ who breached his duty to develop the record related to Plaintiff's physical impairments and obtain her missing treatment records.

As a general matter, it is the burden of a claimant to provide medical evidence to demonstrate that she is disabled. *See* 20 C.F.R. § 416.912(c). However, because social security proceedings are inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial

nature of a benefits proceeding." *Moran*, 569 F.3d at 112 (internal quotation marks and citation omitted).  As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits," *Sims*, 530 U.S. at 111, even when the claimant is represented by counsel.  *Moran*, 569 F.3d at 112.

However, the ALJ's obligation to develop the record is not infinite and limitless, and does not extend to circumstances where the record contains sufficient evidence to allow the ALJ to make his RFC determination.

> Although an ALJ has an affirmative duty to develop the administrative record even when a claimant is represented by counsel, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.

*Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (quotations and internal citations omitted).  Additionally, "[t]he ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07 Civ. 11099(GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008).

The regulations specifically provide that the ALJ has to make every reasonable effort to help a claimant obtain medical evidence to fulfill his duty to develop the claimant's complete medical history.  *See* 20 C.F.R. § 416.912(b)(1).  They define every reasonable effort as the ALJ's ability to make an initial request for documents to medical sources that maintain the evidence, and, in the event the evidence has not been received, make a follow-

up request within 10 and 20 days after the initial request to obtain the missing evidence. *Id*. § 416.912(b)(1)(i).

Plaintiff testified during her March 2019 hearing that she received mental health treatment from Dr. Faye at BestSelf and treatment for her physical impairments from her primary care physician Dr. Chersee at Northwest Community Health Center. (Dkt. 9 at 49-50). Pursuant to the authorizations for the release of her medical file signed by Plaintiff during the hearing, the ALJ received Plaintiff's mental health records, but the records from Northwest Community Health Center remained missing. (*Id*. at 303-447). Despite his duty to make a follow-up request for the outstanding evidence of Plaintiff's treatment by her primary care physician, the ALJ did not make any attempts to contact Northwest Community Health Center following his initial request for evidence. Accordingly, the Court finds that the ALJ did not exercise his duty to make every reasonable effort to obtain Plaintiff's outstanding records. *Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 218 (S.D.N.Y. 2017) (remand was warranted because the ALJ did not fulfill his duty when he did not follow up with plaintiff's treating source to obtain the missing records).

The Commissioner submits that Plaintiff's counsel was responsible for either securing the records from Northwest Community Health Center or requesting the ALJ's assistance in obtaining them. (Dkt. 11-1 at 11). The Court disagrees. The Commissioner's argument improperly shifts the burden for development of the record from the ALJ to Plaintiff's counsel and it disregards the ALJ's independent duty to assist a claimant in "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] . . . all the relevant facts," particularly when the claimant is unrepresented. *Lamay v. Comm'r of Soc.*

*Sec.*, 562 F.3d 503, 509 (2d Cir. 2009) (alteration and internal quotations omitted).  That is not to say that a claimant's representative is relieved from any duties associated with the claimant's production of evidence.  *See Titles II & XVI: Resp. for Dev. Written Evidence*, Soc. Sec. Ruling ("SSR") 17-4p, 2017 WL 4736894, at *2 (S.S.A. Oct. 4, 2017) (claimants' representatives must assist claimants in satisfying their duties regarding the submission of evidence and in complying with the Commissioner's requests for information or evidence); *see also Melissa I. o/b/o R.J.R.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1799 (WBC), 2022 WL 3358138, at *4 (W.D.N.Y. Aug. 15, 2022) ("[A]lthough it is the ALJ's obligation 'to assist in developing the administrative record, that obligation does not entirely supplant a claimant's obligation to diligently prosecute his or her case.") (internal citation omitted).

Although an ALJ "may rely on [a] claimant's counsel to obtain missing evidence under some circumstances," the Second Circuit "has stopped short of holding that the ALJ may delegate his or her duty to the claimant's counsel."  *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016).  Even though Plaintiff here enjoyed the benefit of legal representation during the continued hearing, she was, nevertheless, proceeding *pro se* during the original March 2019 hearing and for several months thereafter until June 2019, when she retained legal counsel.  *See Moran*, 569 F.3d at 113 (the ALJ's duty to develop the record is heightened when claimant appears *pro se*). Therefore, the ALJ had an independent heightened duty during that time to secure Plaintiff's outstanding records from her treating physician.  The ALJ failed to fulfill that duty while Plaintiff remained unrepresented, and he also completely ignored Plaintiff's counsel's subsequent request for the updated records made prior to Plaintiff's continued

- 10 -

hearing. He neither inquired whether counsel had, in fact, received the missing records during or after the hearing, nor kept the record open for counsel to supplement Plaintiff's medical file. *See Petersen v. Comm'r of Soc. Sec.*, No. 18-CV-6143-FPG, 2019 WL 2051650, at *4 (W.D.N.Y. May 9, 2019) ("ALJ never took any independent steps to develop the record. He did not attempt to obtain the records himself or even follow up with the representative to determine the status of the request or warn him that a decision would be made without the records."); *cf. Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (having failed to contact plaintiff's treating physician, the ALJ, nevertheless, fulfilled his duty to develop the record when he kept the record open to allow plaintiff's counsel to obtain the physician's records, and after counsel failed to do so, reminded him that no evidence had been received and that a decision would be made on the existing record).

The Commissioner argues that the ALJ had no obligation to obtain additional evidence from Plaintiff's treating physician because the record was sufficiently developed, and the ALJ possessed enough evidence to assess Plaintiff's impairments and make his ultimate RFC determination. (Dkt. 11-1 at 12-16). The Court disagrees because before deciding whether the Commissioner's decision is supported by substantial evidence it "must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record.'" *Scott v. Astrue*, No. 09-CV-3999 (KAM)(RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). Where the ALJ has violated this duty, remand is appropriate.

*See Moran*, 569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision."); *Rosa*, 168 F.3d at 83 (remand was particularly appropriate when the ALJ "failed to seek potentially relevant information from a number of . . . doctors and treatment facilities").

Here, the Court finds that the record related to Plaintiff's physical limitations was not sufficiently developed to allow the ALJ to make his RFC finding. Specifically, the ALJ determined that Plaintiff was able to perform the full range of light work based on his analysis of only three treatment notes from Mobile Physicians Services, where Plaintiff was seen in late 2016 for asthma and back pain, as well as the opinions of a consultative examiner and a non-examining and non-treating State agency medical consultant. (Dkt. 9 at 19-22). What is more, all of this evidence dates back to late 2016 and early 2017—two years prior to Plaintiff's hearing and the ALJ's decision. It is unclear why the ALJ ignored this two-year gap between Plaintiff's last examination and the hearing considering his obligation to develop Plaintiff's complete medical history. *See* 20 C.F.R. § 416.912(b)(1)(ii) ("Complete medical history means the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application.").

Moreover, the ALJ was aware of the gap because he repeatedly noted the limited treatment evidence related to Plaintiff's physical functioning in his decision. (Dkt. 9 at 20-22). Indeed, while the ALJ discussed the evidence of Plaintiff's treatment for back pain and asthma by Mobile Physicians Services and her consultative examination, he also stated

that the "record contains no evidence of any continuing medical treatment for any physical condition after the date of [the] consultative examination, more than two year[s] prior to the date of the hearing." (*Id*. at 21). This was important because the ALJ relied in part on the absence of evidence to conclude that Plaintiff was capable of performing no greater than light exertional work. *See Gina D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1473-DB, 2022 WL 2317967, at \*7 (W.D.N.Y. June 28, 2022) (the ALJ reliance on the absence of plaintiff's treatment records in making his RFC determination improper and warranted remand).

Additionally, the ALJ specifically acknowledged that "the record contains no opinion evidence from any treating sources," yet he chose to ignore Plaintiff's repeated testimony that she was being treated by her primary care physician Dr. Chersee at Northwest Community Health Center and failed to undertake any action to obtain his records. (*Id*. at 22, 41-42, 50). That is not to say that the ALJ was not allowed to make his RFC determination without an opinion of Plaintiff's primary treating source. *See Tankisi v. Comm'r of Soc. Sec*., 521 F. App'x 29, 34 (2d Cir. 2013) ("remand is not always required when an ALJ fails in his duty to request opinions . . . where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." (citations omitted)). However, where, as here, the record of the claimant's impairments is very limited and insufficient to assess the claimant's RFC, the ALJ's responsibility to obtain the claimant's complete medical records, including those from the treating sources, becomes crucial to the disability determination. *See Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("[W]here the ALJ failed to develop the record sufficiently to make

appropriate disability determinations, a remand for further findings [that] would so plainly help to assure the proper disposition of [the] claim . . . is particularly appropriate." (internal quotations omitted)); *Manago v. Kijakazi*, No. 20-CV-1251 (MKB), 2021 WL 4408966, at *8 (E.D.N.Y. Sept. 26, 2021) (remand was warranted where the ALJ failed to develop the record when he did not seek functional assessments from plaintiff's treating physicians and drew conclusions from the record that consisted only of medical notes).

Here, the ALJ was aware that Plaintiff's physical functioning remained central to her disability claim because even two years after her last physical examination Plaintiff testified that she was treated for asthma, "disc problem" in her back, and knee pain by her primary doctor. (*Id*. at 41-42, 50, 454). Aside from Plaintiff's hearing testimony about the above impairments, there are references in Plaintiff's treatment notes that she was referred to physical therapy for treatment of her lumbar impairment and that she might have also suffered from migraines. (*Id*. at 226, 232, 258). Yet, the ALJ did not inquire about treatment for either of these conditions during the hearing, nor did he undertake any steps to obtain Plaintiff's medical evidence from her primary treating sources. Instead, he made his RFC determination based on the dated, and, most importantly, incomplete record.

In sum, because the ALJ committed an error by failing to obtain the updated medical evidence pertaining to Plaintiff's physical functioning, remand is appropriate. "[B]ecause the ALJ failed to adequately develop the record in reaching his determination of [plaintiff's] residual functional capacity, the Court need not—indeed, cannot—reach the question of whether the Commissioner's denial of benefits was based on substantial evidence." *Jones v. Apfel*, 66 F. Supp. 2d 518, 542 (S.D.N.Y. 1999). Accordingly, on

remand, the ALJ is directed to exercise his duty to develop the complete medical record related to Plaintiff's physical impairments and consider it in his RFC determination.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent the matter is remanded for further administrative proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. 11) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        October 31, 2022
              Rochester, New York